IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ERNEST MORRIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 12-1114-RGA |
| | : | |
| OFFICER JEFFREY SENDEK and CPL. STEVE PURSE, | : | |
| | : | |
| Defendants. | : | |

Ernest Morris, Howard R. Young Correctional Institution, Wilmington, Delaware.
Pro Se Plaintiff.

Darryl Anthony Parson, Esquire, New Castle County Law Department, New Castle, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

May 7, 2014
Wilmington, Delaware

ANDREWS, UNITED STATES DISTRICT JUDGE:

Plaintiff Ernest Morris, an inmate at the Howard R. Young Correctional Institution, Wilmington, Delaware, filed this action pursuant to 42 U.S.C. § 1983. (D.I. 3). He appears *pro se* and was granted leave to proceed *in forma pauperis.* (D.I. 4). Presently before the court is Defendants' motion for summary judgment. (D.I. 19). On January 16, 2014, Plaintiff was directed to file an answering brief on or before February 6, 2014. (D.I. 22). Plaintiff was advised that if he failed to respond to the motion, it would be decided on the papers submitted. Plaintiff did not file a response to the motion for summary judgment.

## PROCEDURAL AND FACTUAL BACKGROUND

The complaint (D.I. 3) alleges as follows: After responding to a dispute, Defendants advised Plaintiff that he had an outstanding warrant and was being arrested. Plaintiff was standing outside his car, protested and got into his car, put it in drive and told Defendants that he was going home because he did not "have any warrants here." (*Id.* at 3). Defendants pulled Plaintiff from the car and he was tased. Plaintiff alleges that while on the ground Defendants kicked and punched him. Defendants called an ambulance and Plaintiff was taken to the hospital for treatment. He was charged with assaulting an officer and other charges. Plaintiff states he was told a few days later that there was not a warrant so he should not have been detained.

The following undisputed facts are derived from Defendants' affidavits and police reports of the incident at issue. (D.I. 20, exs. A, B).[1] On December 13, 2011,

---

[1] Plaintiff's Complaint (D.I. 3) paints the same general sequence of events, with less detail. It is generally not inconsistent with Defendants' affidavits and police reports.

2

Defendants New Castle County Police Officers Jeffrey Sendek and Steven Purse responded to the Castlebrook Apartments in New Castle, Delaware, to investigate a domestic-related burglary in progress by a person who was suspected of being armed with a weapon  The suspect was subsequently identified as Plaintiff.

Sendek, who was the first to arrive at the scene, saw Plaintiff standing next to a white Chrysler sedan.  Plaintiff had backed the vehicle into a handicapped parking spot in front of the apartment complex.  Sendek spoke to Plaintiff who was calm and cooperative.  Plaintiff stated that he was removing personal property from apartment 18D.  New Castle County Police Officer Robert Williams arrived and informed Sendek that earlier in the day he had responded to a domestic dispute at the same location that involving Plaintiff and Eric Holmes, his cousin and former roommate.  Williams had ordered Plaintiff not to attempt to retrieve possessions from apartment 18D without a police escort.  Sendek asked Plaintiff how he had gained access to apartment 18D, and Plaintiff stated that he provided the name, "Eric," to the Castlebrook Apartments maintenance staff, who gave him access to the apartment.

Next, Purse arrived.  He approached Williams and Sendek, who were speaking to Plaintiff and Holmes.  Holmes told the officers that his television was in the back seat of Plaintiff's car.  Williams ordered Plaintiff to remove the television from the rear seat of the vehicle, and to return it to apartment 18D.  Upon his return from apartment 18D, Plaintiff entered his vehicle, and started the ignition.  Sendek and Williams told Plaintiff to "sit tight."  Plaintiff complied and exited his vehicle, but left the engine running.

Williams returned to his police vehicle and ran a check on Plaintiff that confirmed there was a warrant for Plaintiff's arrest for a theft that had occurred in the Delaware

3

State Police's jurisdiction. Williams approached Plaintiff, who was standing next to the idling vehicle, and stated to Plaintiff, "you are under arrest, turn around and put your hands behind your back." Plaintiff did not obey the command. Instead, he jumped into the driver's side seat of his vehicle and evaded Williams' grasp. Williams struggled with Plaintiff, who remained in the driver's-side seat, while Purse and Sendek approached the vehicle. Plaintiff then revved the engine of his vehicle while continuing to struggle Williams, but the vehicle did not move because it was not in gear.

Earlier, Holmes had advised dispatch that Plaintiff kept a firearm in the center console of his vehicle and this information had been given to the officers who responded to the scene. As Purse approached the vehicle, he saw Plaintiff reach towards the vehicle's center console, and, because he was aware that Plaintiff kept a firearm in the console, Purse drew his firearm. He did not have a clear shot at Plaintiff due to the ongoing struggle. As a result, Purse drew his electronic control device, as did Sendek. While Williams physically struggled with Plaintiff inside the vehicle, Purse fired the control device at Plaintiff's chest, and Sendek fired his control device at Plaintiff's back. Nonetheless, Plaintiff placed his car in gear and accelerated the car forward and to the left in the direction of Sendek and Purse both of whom narrowly avoided being struck. Williams was still holding onto Plaintiff and was dragged alongside the vehicle. Sendek and Purse chased the vehicle as it made a hard left in the parking lot, jumped a curb, and collided into the brick wall of an apartment building. Williams, who had been holding onto Plaintiff, was thrown from the vehicle.

Sendek and Purse ran to the vehicle. Purse drew his firearm, and Sendek grabbed Plaintiff, who looked like he was ready to flee. Purse holstered his weapon

upon seeing the renewed struggle and approached Plaintiff and Sendek. During the struggle, Plaintiff fell to the ground. Plaintiff continued to resist arrest and ignored repeated commands to place his hands behind his back. Purse placed his knee in Plaintiff's back, and struck Plaintiff two or three times in the face with a closed fist. After a twenty to thirty second struggle, the officers gained control of Plaintiff and handcuffed him.

Plaintiff complained of back and neck pain as a result of the vehicle crash. In addition, a probe from the control device was lodged in his right cheek below the eye. Williams, though dazed, was able to stand. Both Williams and Plaintiff were taken to Christiana Hospital for medical treatment.

Sendek conducted an inventory of the vehicle and, in the center console, discovered a .380 Bersa handgun loaded with six .380 rounds. A check of the vehicle identification number indicated that the vehicle had been reported stolen from Philadelphia. The vehicle's license plate was not registered to its VIN number, although the license plate matched the make and model of the vehicle. In addition, it was discovered that Plaintiff has an out-of-state felony conviction and is a person prohibited from possessing a deadly weapon. Plaintiff was charged with assault, resisting arrest, burglary, carrying a concealed weapon, and numerous other offenses.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "could affect the

outcome" of the proceeding. *See Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also Matsushita*, 475 U.S. at 587. The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. *Anderson*, 477 U.S. at 249. Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The Court will not grant the entry of summary judgment without considering the merits of Defendants' unopposed motion. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that a district court should not have granted summary judgment solely on the basis that a motion for summary judgment was not opposed.").

Defendants move for summary judgment on the grounds that the use of force was objectively reasonable in light of the circumstances and they are protected from suit by reason of qualified immunity.

## DISCUSSION

### Use of Force

Although not specifically stated, when liberally construing the complaint, Plaintiff appears to allege excessive force in the course of his arrest. "[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397; *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004). A court must judge the reasonableness of particular force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The reasonableness of the officer's use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

Because the determination of whether the use of force is reasonable is a fact specific inquiry, courts have reached different results depending upon the facts and

circumstances of each case. *See Bender v. Township of Monroe*, 289 F. App'x 526 (3d Cir. 2008) (genuine issues of material fact precluded summary judgment on whether police officers retaliated and used excessive force against an arrestee by beating him while handcuffed, hitting him in the face with a flashlight, and breaking his cheekbone, because arrestee had kicked an officer); *Davis v. Bishop*, 245 F. App'x 132 (3d Cir. 2007) (no excessive force by police officers in handcuffing and subduing arrestee who was intoxicated, disobeyed officer's orders to attempt to perform a field sobriety test and get off the hood of the police car, and eventually kicked out the rear window of the police cruiser, and although officer admitted to having flung arrestee off the car, officers were confronted with an uncertain situation with an individual who was uncooperative); *Feldman v. Community Coll. of Allegheny*, 85 F. App'x 821 (3d Cir. 2004) (no excessive force by police officers when arresting college student even if, as student alleged, the officers wrestled student to the ground and kicked him in the head, when the student resisted arrest and actively struggled with the officers when they attempted to remove him); *see also Zivojinovich v. Barner*, 525 F.3d 1059, 1071-73 (11th Cir. 2008) (use of a taser to subdue a suspect who had repeatedly ignored police instructions and continued to act belligerently found to be reasonably proportionate to the need for force); *Gruver v. Borough of Carlisle*, 2006 WL 1410816 (M.D. Pa. 2006) (no excessive force when use of taser was consistent with level of resistance and there was no indication police officers applied any gratuitous force).

Plaintiff failed to present any evidence to support his claim, and merely rested upon the allegations of his complaint. The reasonableness of defendants' conduct in their use of force is measured by "careful attention to the facts and circumstances" of

8

this case. *See Graham*, 490 U.S. at 396. The facts before the court are that there was an outstanding warrant for Plaintiff's arrest, Plaintiff resisted arrest, was aggressive and combative, even after two applications of electronic control devices. In addition, the taser had no effect upon Plaintiff, and he appeared to reached into a location where it was known he carried a concealed weapon. Plaintiff attempted to flee the scene with his vehicle, dragging a police officer with the vehicle. Even after the vehicle crashed into a brick wall, Plaintiff struggled with the officers, continued to resist arrest, and ignored repeated demands to place his hands behind his back which resulted in use of force to gain control of the situation.

The facts and circumstances of Plaintiff's arrest, as described by Defendants, are not disputed with competent proof by Plaintiff. Even when viewing the facts in the light most favorable to Plaintiff, it is undisputed that Plaintiff resisted arrest, continued to resist arrest even after he was tased, attempted to flee in a speeding car, and continued to resist arrest after the car crashed into a wall. Keeping in mind that "police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation," the Court concludes that the force used by Defendants was objectively reasonable to gain control of the situation. *See Graham*, 490 U.S. at 397.

For the above reasons, the Court finds that the force that was applied does not rise to the level of a constitutional violation. Therefore, the Court will grant Defendants' motion for summary judgment as to the excessive force claims.

Detention

Plaintiff alleges that he should not have been detained because there was not a "warrant yet." Plaintiff presented nothing to refute Defendants' evidence that police officers were investigating a domestic related burglary, or that Williams conducted a check on Plaintiff that revealed a warrant had been issued for Plaintiff for a theft that occurred in the jurisdiction of the Delaware State Police. (*See* D.I. 20 ex. B).

There are no fact issues in dispute on this claim and the law is well settled. "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Ubiles*, 224 F.3d 213, 217 (3d Cir. 2000) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)). Once Plaintiff was stopped and an active warrant was discovered, Defendants were clearly authorized to arrest Plaintiff. There being no material issues of fact bearing on this claim, the Court will grant Defendants summary judgment on the issue.

**CONCLUSION**

For the reasons set forth above, the Court will grant Defendants' motion for summary judgment. (D.I. 19).[2] A separate Order, consistent with this Memorandum Opinion, will be entered.

---

[2]The court will not address defendants' qualified immunity argument as it finds no violation of plaintiffs constitutional rights. *See Pearson v. Callahan*, 555 U.S. 223 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).